SUBMITTED SEPTEMBER 12, 1968—DECIDED OCTOBER 11, 1968.

*Joseph B. Bergen,* for appellant.
*John R. Calhoun,* for appellees.

## 24791. ARGO v. GEISE.

*Claude N. Morris,* for appellant.

*Smith, Crisp & Hargrove, Henry L. Crisp,* for appellee.

NICHOLS, Justice. It is necessary only to consider whether the signature was acknowledged by the testatrix. While the record contains affidavits of each subscribing witness that the testatrix did not affix her own signature to the writing and did not acknowledge her name appearing in the body of the writing at the time it was signed by the three witnesses in her presence and in the presence of each other, one of the three witnesses submitted a further affidavit in which she swore: "She informed us that she wanted us to witness her will. She handed us a piece of paper that was folded in such a manner that we could see no writing on it and Lucille S. Smith, Frances T. Smith, and I signed our names on it. This was the same piece of paper or papers that was filed in the Court of Ordinary, Sumter County, by John Thomas Argo as the last will and testament of the said Betty C. McKee. Said papers now bearing the filing date of February 8, 1968, over the signature of Eugene Horne, Ordinary. I examined said papers recently at a hearing in the court of ordinary before the said Eugene Horne when said papers were offered as the last will and testament of Betty C. McKee. When I examined said papers at said hearing I recognized my signature thereon and at that time said papers were unfolded and I saw there was other writing thereon. At said hearing I saw "Betty McKee" handprinted on said papers as they were unfolded and

I am not saying that the said Betty C. McKee did not intend this to be her signature, it was on the paper or papers that Lucille S. Smith, Frances T. Smith, and I signed at the instance and request of Betty C. McKee and that is all I know about it. Betty C. McKee was of sound and disposing mind and memory at the time the three of us aforesaid signed our names to said paper or papers. I will not state there was no writing or signature on the paper Betty C. McKee asked the three of us aforesaid to witness as her will, but there was none visible because of the manner in which it was folded."

"The testator must either sign in the presence of the attesting witnesses or acknowledge his signature to each of them in whose presence he did not sign. *Webb v. Fleming*, 30 Ga. 808 (1) (76 AD 675); *Wood v. Davis*, 161 Ga. 690 (1) (131 SE 885)." *Thornton v. Hulme*, 218 Ga. 480, 481 (128 SE2d 744). Thus under the facts of the present case where no witness actually saw the testatrix sign the will and where the testatrix did not acknowledge her signature thereon the trial court did not err in granting the motion of the caveatrix for a summary judgment.

*Judgment affirmed. All the Justices concur, except Nichols, J., who dissents.*

NICHOLS, Justice, dissenting. The above decision was prepared in accordance with the opinion of the majority of the court but I must dissent from the judgment affirming the grant of the summary judgment.

*Code* § 113-301, while amended in 1958 to lower the required number of witnesses from three to two, has remained basically the same since it was first adopted in 1851 (Ga. L. 1851-52, p. 104), and even then was a mere application to personalty of the law relating to realty.

The decisions of the court based upon such language are not without inconsistency. The decision in *Thornton v. Hulme*, 218 Ga. 480 (128 SE2d 744), relied upon by the majority, states that it is necessary for the witnesses to see the testator sign or for the testator to acknowledge such signature. This is a full bench decision but as will be shown it is in conflict with older full bench decisions.

In *Webb v. Fleming*, 30 Ga. 808 (1) (76 AD 675), cited in the

*Thornton* case, the holding was that an acknowledgment of the signature by the testator was sufficient, but the question of whether an acknowledgment of the will without seeing the testator's signature would be sufficient was not presented.

*Wood v. Davis,* 161 Ga. 690 (1) (131 SE 885), also cited in the *Thornton* case, need not be discussed in view of the fact that two Justices dissented.

In *Slade v. Slade,* 155 Ga. 851, 859 (118 SE 645), a full bench decision, it was held: "In the case of *Beall v. Mann,* 5 Ga. 456, 469, the court said, 'In the case of Gryle v. Gryle, 1 Ves. Jr. 11, Lord Hardwick doubted whether it was a sufficient execution, and publication of a will, for the testator to say before the witnesses, "this is my will," without some further act on his part. But those doubts have long since vanished, and modern adjudications have gone to the extent of deciding that a will is duly executed and published, though the witnesses neither saw the testator's signature, nor were made acquainted with the instrument they attested, provided they were requested by the testator to subscribe the memorandum of attestation. British Museum v. White, 3 M. & P. 689, s. c. 6 Bingh. 310. Wright v. Wright, 5 M. & P. 316, s. c. 7 Bingh. 457. Johnson v. Johnson, 1 Cromp. and Mees. 140.' " And on page 860 of the same decision it was said: "In the more recent case of White v. Trustees of British Museum, 3 M. and P. 689, 6 Bing. 310, which was very similar as to its facts upon this point to the case at bar, it was held that a will was sufficiently attested when subscribed by three witnesses in the presence of the testator and at his request, though none of the witnesses saw the testator's signature and only one of them knew what the instrument was."

In *Brown v. McBride,* 129 Ga. 92, 93 (58 SE 702), another full bench decision of this court wherein the jury was held authorized to find for the propounders of the will where the evidence as to the circumstances surrounding the obtaining of the witnesses' signatures was set forth as follows: "Clegg was the testator. G. A. McDonald, J. M. Rhodes, and A. A. Kerney were the subscribing witnesses. There was no testimony by any witness that the testator actually signed the will in the presence of any of the witnesses, but there was testimony to the effect

that all three witnesses signed the will in the presence of the testator and in the presence of each other. Upon this point, Kerney testified by interrogatories: 'I was a witness to the will; signed the original will as a witness at the request of Judge D. H. Pope. George McDonald and John Rhodes were the other witnesses. I do not know whether the other two witnesses were present when Clegg signed the will, but my best judgment and recollection is that I was not present when Clegg signed the will. I and the other two witnesses signed the will in the presence of the testator, as witnesses and in the presence of each other.' Neither McDonald nor Rhodes testified. It was proved on the trial that McDonald was dead. It was shown that the signature to the will was the genuine signature of the testator. There was also evidence to the effect that, some fifteen years before the trial, Rhodes had left the country and had not been heard of since."

Under the full bench decisions beginning with *Beall v. Mann*, supra, decided in 1848, and never criticized in the one hundred and twenty years since, although at times overlooked, the judgment granting the caveator's summary judgment and thus denying the propounders the opportunity to have a jury decide the issue should be reversed.