WOOD *v.* DAVIS; *et vice versa.*

1. To constitute the due execution of a paper purporting to be a will, the attesting witnesses must either see the testator attach his signature to the instrument, or the testator must acknowledge the signature to the instrument to be his.

2. If the principle that the testator need not actually see the subscribing witnesses attach their signatures to the instrument, if from his actual position or situation he could see them do so, is applicable to the attesting witnesses, the facts in the present case do not bring it within that rule. The testator having signed the instrument in the street, and one of the witnesses having subscribed the instrument as a witness

---

Attestation 6 C. J. p. 553, n. 90.

Wills 40 Cyc. p. 1108, n. 36, 41; p. 1120, n. 38; p. 1271, n. 47; p. 1274, n. 66, 66 New; p. 1304, n. 64, 68; p. 1329, n. 19.

Witnesses 40 Cyc. p. 2155, n. 4.

in his office in an adjoining building, the presumption of law is that he could not and did not see the testator sign the instrument; and this presumption was not overcome by any evidence. On the contrary, the uncontradicted evidence shows that this witness was ignorant and unconscious of the whereabouts of the testator at the time the latter subscribed the instrument, and that he did not see the testator attach his signature to the instrument.

3. The presumption that a will is duly executed, arising from a full attestation clause, is rebuttable; and such presumption was rebutted by the uncontradicted evidence in this case.

4. A caveator to the probate of a will can admit a prima facie case in favor of the propounder, and in such case is entitled to open and conclude. By the facts set out in her amendment to her caveat, the caveatrix admitted a prima facie case in favor of the propounder, and was entitled to open and conclude; and the trial judge did not err in allowing said amendment.

Nos. 4730, 4731.   FEBRUARY 10, 1926.

Appeal from probate of will. Before Judge Custer. Dougherty superior court. January 8, 1925.

The will of H. S. Johnson was offered for probate in solemn form. A caveat was filed by Mrs. E. W. Wood. The first ground of the caveat alleged that "Said paper is not the last will and testament of said H. S. Johnson, for the reason that, even if it had been otherwise valid, the same was never legally executed as a will, for the reasons that (a) the same was never attested and subscribed by the three witnesses in the presence of the said H. S. Johnson, and (b) neither was the same attested or subscribed by the said three witnesses in the presence of each other, and (c) said paper was not signed by said Johnson in the presence of three witnesses, nor acknowledged by him in the presence of three witnesses, nor attested by three witnesses; (d) the same was never signed by the alleged testator in the presence of three witnesses, nor acknowledged by said alleged testator, nor any one for him in his presence in the presence of said witnesses, nor did said alleged testator request by himself or any one else in his presence that said three witnesses attest said paper." On the trial in the superior court upon appeal, the caveatrix offered the following amendment to her caveat: "1. She admits that the paper propounded and sought to be probated as the will of H. S. Johnson was signed by said H. S. Johnson when he was prima facie of testamentary capacity, and that after the said H. S. Johnson signed the same, the three persons, J. A. Hamil, R. R. Cates, and W. J. Peed, whose

names appear on said paper as witnesses, did sign their said names on said paper underneath an attestation clause reading as follows: 'Signed and published by H. S. Johnson as his last will and testament, in the presence of the undersigned who write our names hereto as witnesses of said testator and in his presence and in the presence of the executrix.' But caveatrix says that as a matter of fact said paper was not signed or acknowledged by said Johnson in the presence of said witnesses, nor did said witnesses attest or subscribe the same in the presence of said Johnson, and therefore said paper is not a legally executed will. 2. Said caveatrix, having admitted a prima facie case, assumes the burden of proving the grounds of her caveat, and claims the right to begin the introduction of the evidence, and to the opening and conclusion of the argument."

The caveatrix relied solely upon the ground just stated. The undisputed evidence establishes the following facts: The testator, riding on the back seat of a sedan car driven by his son in law, drove up in front of the Union Grocery Company at Albany, Georgia. The car stopped at the curbing, which is 38 feet from the door of the grocery company. Hamil, who was inside, saw Johnson as he drove up, and went out to the automobile. Johnson informed Hamil that' he had made a new will, and desired that it be witnessed by the same persons who had witnessed his former will. These witnesses were Hamil, Cates, and Peed. Hamil procured pen and ink and called Cates. Johnson signed the will in the automobile, after which Hamil and Cates signed. Johnson signed first, then Cates and then Hamil signed. Hamil then carried the instrument to Peed's desk in the front office of said grocery company, leaving Johnson at the car. Peed was sitting at his desk. Hamil said to Peed, "Mr. Peed, here is a new will Mr. Johnson says he made, and he wanted us to sign it, as we witnessed the other will." Peed had his pen in his hand at the time, and signed the instrument right there. Hamil then took it and carried it out of the office, through the front door, and gave it back to Johnson. Johnson did not know where Peed was. Nothing was said by Peed about where Johnson was. Neither Johnson nor Peed knew where the other was. Johnson did not and could not hear what Hamil said to Peed when he went in there. Peed did not and could not hear what

Johnson said to Hamil. At the time Peed signed the instrument he sat at his desk. He did not get up at all. He did not see Johnson that day; did not know where he was. He did not see Johnson sign the paper, and did not know he was in his neighborhood. Hamil testified that, if Johnson was in the right position, there was nothing to prevent him from seeing Peed at the time he signed the will. He could if the car was in the right location, but he did not know that the car was in such position. Cates testified that he had tried to look through the window in a similar manner, and he could see Peed. Attached to the instrument was a full attestation clause.

The jury returned a verdict in favor of the propounder. The caveatrix moved for a new trial, and excepted to the judgment overruling her motion. The propounder objected to the allowance of the above amendment to the caveat, on the ground that it did not admit a prima facie case which entitled the plaintiff to the opening and conclusion. The trial judge overruled this objection, and allowed the amendment. To this ruling the propounder excepted and assigned error thereon in a cross-bill of exceptions.

*Pope & Bennet,* for caveatrix.

*Claude Payton,* for propounder.

HINES, J. (After stating the foregoing facts.)

1. The single question presented for decision in the main bill of exceptions is this: Is a will properly executed where one of the attesting witnesses did not see the testator sign the instrument purporting to be his last will, and where the testator did not acknowledge to said witness that the signature to the instrument was his signature? "All wills (except nuncupative wills) disposing of realty or personalty must be in writing signed by the party making the same, or by some other person in his presence, and by his express direction, and shall be attested and subscribed in the presence of the testator by three or more competent witnesses." Civil Code (1910), § 3846. To constitute a legal execution of an instrument purporting to be a will, under the above section of the Code, it is absolutely necessary that the attesting witnesses either actually see the testator sign the instrument, or that the testator acknowledge his signature thereto either expressly or impliedly. This is the plain language of the statute.

It expressly declares that the writing "shall be attested and subscribed in the presence of the testator by three or more competent witnesses." Attestation is the act of witnessing the actual execution of a paper, and subscribing one's name as a witness to that fact. *White* v. *Magarahan,* 87 *Ga.* 217 (13 S. E. 509); *Baxley* v. *Baxley,* 117 *Ga.* 60 (43 S. E. 436); 28 R. C. L. 123, § 78; 1 Schuyler on Wills, § 513; 40 Cyc. 1120. Attestation is the act of witnessing the actual execution of a paper. *Slade* v. *Slade,* 155 *Ga.* 851, 861, 862 (118 S. E. 645). Our word *witness* comes from the Anglo-Saxon word *witan,* which means to know. A witness to an instrument can not know that the signature of the maker thereto is his signature unless he either sees the maker sign the instrument, or unless the maker acknowledges to the witness that the signature thereto is his signature. In Swift *v.* Wiley, 1 B. Mon. (Ky.), 114, 117, Chief Justice Robertson, of the Supreme Court of Kentucky, said: "To attest the publication of a paper as a last will, and to subscribe to that paper the names of the witnesses, are very different things, and are required for obviously distinct and different ends. Attestation is the act of the senses, subscription is the act of the hand; the one is mental, the other mechanical; and to attest a will is to know that it was published as such, and to certify the facts required to constitute an actual and legal publication; but to subscribe a paper published as a will is only to write on the same paper the names of the witnesses, for the sole purpose of identification." In Chase *v.* Kittridge, 11 Allen (Mass.), 49, 63 (87 Am. D. 687), Judge Gray said: "The statute requires that the will shall be in writing and signed by the testator, and shall be attested and subscribed in the presence of the testator, by three or more competent witnesses. He is not required to write his signature in their presence, but it is his will which they are to attest and subscribe. It must be his will in writing, though he need not declare it to be such. It must therefore be signed by him before it can be attested by the witnesses. He must either sign in their presence, or acknowledge his signature to them, before they can attest it." Witnesses must see the testator sign, or he must acknowledge the signature to be his. Re Laudy, 148 N. Y. 403 (42 N. E. 1061). Attesting witnesses, by their nature, name, and designation, are to attest or witness something;

that something is the signature to the will. Re Eakins, 35 N. Y. Supp. 489 (13 Misc. 557). Subscribing witnesses to a will are required for the purpose of identifying the signature of the testator. For this purpose it is essential to the due execution of the will that either they see the testator subscribe his name, or that he should acknowledge it to be his. Re Hitchler, 55 N. Y. Supp. 642 (25 Misc. 365). In Hall v. Hall, 17 Pick. (Mass.), 373, the court said: "The witnesses must attest to the signing of the will. They must have knowledge of that fact in some manner. If they saw the testator actually sign the will, there could be no doubt; and there would be as little if the testator acknowledged his signature to the witnesses. And it was held a. long time before the American Revolution, that it was sufficient that the testator should own his signature to the witnesses." Attestation "consists in the witness seeing that those things exist and are done which the statute requires." Tilton v. Daniels, 79 N. H. 368 (109 Atl. 145, 8 A. L. R. 1073). It may be taken to be settled that the attestation required by our statute, which is a reproduction of the English statute of frauds, consists in the witnesses seeing that those things exist and are done which the statute requires must exist or be done, to make the written instrument under the law the will of the deceased. This principle is supported by the great weight of authorities, and we think it is also supported by sound reasoning. The purpose of our statute, as was the purpose of the English statute of frauds, from which it was taken, is to protect persons, in making their wills, from fraud, imposition, and forgeries. To accomplish this purpose, the witnesses must see the testator put his signature to the instrument, or he must acknowledge to them that the signature thereto is his signature. The adoption of a different rule would lay down the bars low and would open the doors wide to frauds and forgeries, which our statute was intended to prevent.

2. It has been held by this court, and properly held, that it is not necessary that the testator shall actually see the witnesses subscribe the instrument, if the situation and circumstances of the testator and the attesting witnesses to the will at the time of its attestation are such that the testator, in his actual position, and without changing the same, can see the act of attesta-

tion. *Robinson* v. *King,* 6 *Ga.* 539; *Reed* v. *Roberts,* 26 *Ga.* 294 (71 Am. D. 210); *Hamlin* v. *Fletcher,* 64 *Ga.* 549; *Gordon* v. *Gilmore,* 141 *Ga.* 347 (80 S. E. 1007). In *Robinson* v. *King,* supra, Judge Nisbet said: "Nor is it necessary that the testator and the witnesses should be in the same room, nor even in the same house." He further said: "The rule is, *if the situation and circumstances of the testator and witnesses are such, as that the testator, in his actual position, might have seen the act of attestation, it is a good attestation."* In *Lamb* v. *Girtman,* 26 *Ga.* 625, 630, this court said: "We agree that the testator's being out of the room raised a presumption that the attestation was not in his presence." In *Lamb* v. *Girtman,* 33 *Ga.* 289, it was said: "When the testator signs his will in the presence of the subscribing witnesses, and retires to an adjoining room and lies down, and the witnesses subsequently signed as subscribing witnesses: *Held,* that the presumption is, that they did not subscribe in presence of the testator, and that this presumption must be rebutted by proof before the will can be set up." If we concede that the above principle, that the testator need not see the witnesses actually sign the instrument, if in his actual position and situation he could see them sign, is applicable to the attesting witnesses, the facts of the present case do not bring it within this rule. The testator signed the instrument in the presence of two of the witnesses, sitting in an automobile in the street, at the curb, in front of the building in the office of which the third witness subscribed the instrument as a witness. There is proof that the testator, from his seat in the automobile might have seen the witness subscribe the instrument; but there is no proof in the record that the witness from his situation could see the testator attach his signature to the document. In fact the signature of the testator was attached to the paper, when the witness did not see the testator at the time this was done, and did not know of his whereabouts, and did not know that he was subscribing his signature to the instrument. In these circumstances it is clear that this subscribing witness could not and did not see the testator subscribe this paper. In no sense could this witness be said to have been in a position from which he could have seen the testator sign this document. He was in ignorance of the presence of the testator and of his intention to sign the

will. The witness certainly could not see something of the occurrence of which he was entirely ignorant and unconscious. Besides, as the will was signed in the street and the signature of the witness attached in the office of the building adjoining the street, the prima facie presumption is that the witness did not see the testator sign the paper. There is not one word in the evidence to rebut this presumption.

3. When the attestation clause to an instrument purporting to be a last will recites all of the facts essential to its due attestation as a will, and it is shown that the alleged testator and those whose names appear thereon as witnesses actually affixed their names to the paper, the presumption arises that it was executed in the manner prescribed by law for the execution of wills. *Underwood* v. *Thurmond,* 111 *Ga.* 325 (36 S. E. 788); *Wells* v. *Thompson,* 140 *Ga.* 119 (78 S. E. 823, 47 L. R. A. (N. S.) 722, Ann. Cas. 1914C, 898); *Shewmake* v. *Shewmake,* 144 *Ga.* 801 (87 S. E. 1046); *Moore* v. *Walton,* 158 *Ga.* 408 (123 S. E. 812). From this full attestation clause, in applying the above principle, it may be said that it will be presumed that the will was properly attested by the subscribing witnesses. But such presumption is rebutted by the clear proof to the contrary. *Underwood* v. *Thurmond,* supra. Here the uncontradicted evidence overcomes the presumption.

Applying the rulings above made, the propounder failed to prove the due execution of this will; and the verdict of the jury propounding the same is contrary to the law and the evidence. It follows that the trial judge erred in refusing to grant the new trial; and the judgment in the main bill of exceptions must be reversed.

4. By the amendment to her caveat, which is set out in full above, the caveatrix admits that the paper sought to be propounded as the will of H. S. Johnson was signed by him when he was prima facie of testamentary capacity; and that after he signed the same the three persons whose names appear on said paper as witnesses did sign their names on said paper underneath the attestation clause; but she alleges that said paper was not in fact signed or acknowledged by said Johnson in the presence of said witnesses, nor did said witnesses attest and subscribe the same in the presence of said Johnson, and therefore said paper is

not a legally executed will. She further says that, having admitted a prima facie case, she assumes the burden of proving the grounds of her caveat, and claims the right to begin the introduction of the evidence and to the opening and conclusion of the argument. As the attestation clause to said instrument recites all the facts essential to its due execution as a will, and the caveatrix admits that the alleged testator and those whose names appear thereon as witnesses actually affixed their signatures to the paper, the caveatrix admitted a prima facie case, which entitled her to the opening and conclusion. *Underwood* v. *Thurmond, Wells* v. *Thompson, Shewmake* v. *Shewmake, Moore* v. *Walton,* supra. Having admitted a prima facie case, the caveatrix was entitled to the opening and conclusion. In re Arledge's Will, 172 N. C. 563 (90 S. E. 567). It follows that the objection of the propounder to the allowance of said amendment, on the ground that it did not admit a prima facie case which entitled the caveatrix to the opening and conclusion, is without merit, and the trial judge did not err in overruling such objection and in allowing said amendment. The error assigned in the cross-bill of exceptions is that the court erred in allowing said amendment and in giving to the caveatrix the opening and conclusion. It follows that this assignment of error is without merit.

*Judgment on main bill of exceptions reversed; on cross-bill affirmed. All the Justices concur, except Beck, P. J., and Gilbert, J., who dissent.*